25CA1129 Westall v Nix 07-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1129
Arapahoe County District Court No. 23CV31900
Honorable Benjamin Figa, Judge

Michael Reed Westall, Ryan David Westall, and Tyler Anthony Westall,

Plaintiffs-Appellants,

v.

Byron Nix, Brisbane Investments LLC, English Sparrow Investments LLC, Fawnbrook Investments LLC, WN I Investments LLC, WN II Investments LLC, Sworks LLC, Hyacinth Investments LLC, Tarcoola Investments LLC, and WN IV Investments LLC,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Sullivan and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

J. O'Keefe, PLLC, Joseph O'Keefe, Colorado Springs, Colorado; Miller Riggs, Burkeley N. Riggs, Denver, Colorado, for Plaintiffs-Appellants

Shoemaker Ghiselli + Schwartz LLC, Robin J. Elowe, Adam B. Stern, Boulder, Colorado, for Defendants-Appellees

¶ 1     Plaintiffs, Michael Reed Westall, Ryan David Westall, and Tyler Anthony Westall, appeal the district court's judgment in favor of defendants, Byron Nix and nine limited liability companies managed by Nix (the LLCs).  Plaintiffs argue that the district court lacked subject matter jurisdiction to rule on the core issue in this dispute: what percentage of the LLCs plaintiffs and Nix respectively owned.  We disagree and affirm.

## I.     Background

¶ 2     Plaintiffs' father, Michael Tony Westall (Tony),[1] invested in real estate with Nix, his cousin, for decades.  When Tony unexpectedly died without a will, a disagreement arose between plaintiffs (who are Tony's sons) and Nix about who owned the LLCs, each of which held title to a different investment property.

¶ 3     In the separate probate case, plaintiffs asserted that Tony had owned 100% of the LLCs, and that 100% interest transferred to Tony's estate after he died.  The personal representative for Tony's estate disagreed, taking the position that Tony and Nix had each

---

[1] To avoid confusion, we refer to Michael Tony Westall as Tony, like the district court did.  We mean no disrespect in doing so.

1

owned a 50% interest in the LLCs and the estate therefore only owned Tony's 50% interest.

¶ 4     The probate court did not resolve the percentage ownership issue. Instead, plaintiffs and the estate's personal representative entered into a settlement agreement that required the personal representative to assign the estate's as-yet-undetermined interest in each of the LLCs to plaintiffs. The probate court approved the settlement agreement, and in October 2022, the estate executed separate assignments of its interest in each of the LLCs to plaintiffs as "distribution[s] from the Estate."

¶ 5     Over a year later, in November 2023, plaintiffs filed this action against Nix, asserting two claims. The first sought appointment of a receiver for the LLCs and the second alleged conversion against Nix for paying himself for managing them. Nix answered the complaint and filed counterclaims, asserting among other things his ownership interest in and authority to manage and be compensated for managing the LLCs.

¶ 6     After a bench trial, the district court determined plaintiffs and Nix owned eight of the nine LLCs 50-50 and plaintiffs owned 100%

of the ninth. The court found for Nix and against plaintiffs on all claims and counterclaims.

¶ 7 After the judgment, plaintiffs filed a motion to dismiss challenging the district court's subject matter jurisdiction to determine the parties' percentage ownership of the LLCs. Plaintiffs asserted that only the probate court, not the district court, had subject matter jurisdiction to make that determination. The district court disagreed and denied the motion.

¶ 8 Plaintiffs appeal, challenging the district court's subject matter jurisdiction on the same ground as they did below. We disagree with their argument and affirm.

## II. Subject Matter Jurisdiction to Determine Percentage Ownership

¶ 9 We review de novo whether the district court had subject matter jurisdiction to determine the parties' percentage ownership of the LLCs. *See Golden Run Ests., LLC v. Town of Erie*, 2016 COA 145, ¶ 19.

¶ 10 Plaintiffs argue that under section 13-9-103, C.R.S. 2025, the probate court had exclusive subject matter jurisdiction to determine percentage ownership of the LLCs. According to plaintiffs, the

probate court's exclusive authority deprived the district court of subject matter jurisdiction to determine percentage ownership.

¶ 11    Section 13-9-103(1)(a) gives probate courts "original and exclusive jurisdiction [for] [t]he administration, settlement, and distribution of estates of decedents."[2]  But determining percentage ownership of the LLCs was not an act of administering, settling, or distributing the estate.  Indeed, although plaintiffs discuss subsection 103(1)(a) in their opening brief, we do not understand them to be arguing that the percentage ownership determination fell within the ambit of subsection 103(1)(a)'s exclusive authority.

¶ 12    Instead, plaintiffs assert that the probate court could have determined percentage ownership under subsection 103(3).  This subsection provides probate courts with jurisdiction, but not exclusive jurisdiction: "The [probate] court has jurisdiction to determine every legal and equitable question arising in connection with decedents' . . . estates . . . ." § 13-9-103(3).  Under

---

[2] Although section 13-9-103(1)(a), C.R.S. 2025, refers only to the "probate court of the city and county of Denver," our supreme court has indicated that section 13-9-103 applies to all district courts sitting in probate matters.  *Sandstead-Corona v. Sandstead*, 2018 CO 26, ¶ 41.

subsection 103(3), a probate court can determine any issue that is logically related to an estate and is essential to the proper and orderly distribution of estate property even if the issue involves nonprobate assets. *In re Estate of Murphy*, 195 P.3d 1147, 1151-52 (Colo. App. 2008).

¶ 13    We first question whether subsection 103(3)'s authority — the only authority plaintiffs argue empowered the probate court to determine percentage ownership — was exclusive. Based on the statute's plain language, it seems to us that it is not. *Compare* § 13-9-103(1)(a) (granting probate courts "original and exclusive jurisdiction"), *with* § 13-9-103(3) (granting probate courts mere "jurisdiction"). *See also Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008) ("In interpreting statutory language, we presume that the legislature did not use language idly. Rather, the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings." (citation omitted)). And if the probate court's authority to make the percentage ownership determination was not exclusive, nothing prevented the district court from asserting its subject matter

jurisdiction to make that determination. *See* Colo. Const. art. VI, § 9(1) (conferring general jurisdiction on districts courts).

¶ 14    But say we are wrong and subsection 103(3)'s authority is exclusive. Even then, the probate court lost its (supposedly exclusive) authority to make the percentage ownership determination by the time the district court asserted its subject matter jurisdiction to do the same.

¶ 15    While the estate held an interest in the LLCs — before it assigned that interest to plaintiffs as distributions — the probate court had authority to make the percentage ownership determination under subsection 103(3). At that time, determining the percentage ownership of the LLCs was logically related to the estate because it would have delineated an estate asset (i.e., the estate's percentage interest in the LLCs).

¶ 16    But the district court determined percentage ownership *over a year after* the estate had distributed away its as-yet-undetermined interest in the LLCs. Once the estate distributed all its interest in the LLCs, the precise percentage of that interest was no longer relevant to the estate — whatever interest the estate previously held in the LLCs was gone from the estate. Because the district court

determined percentage ownership after this distribution happened, any subsection 103(3) authority the probate court once had to make the determination was gone, leaving no impediments for the district court's assertion of its subject matter jurisdiction to make the determination.

¶ 17 In coming to this conclusion, we note that plaintiffs' interpretation of subsection 103(3) would produce absurd results. *See Colo. Dep't of Revenue v. Garner*, 66 P.3d 106, 109 (Colo. 2003) (avoiding statutory interpretations that lead to absurd results). As we understand it, plaintiffs argue that a probate court's acquisition of subsection 103(3) authority to determine percentage ownership of an asset while that asset is part of an estate means that even after the estate distributes its interest in the asset, as long as the estate is open, the probate court is the only court that can resolve any dispute about the percentage ownership of the asset. But estates can stay open for years, even decades. And while the estate remains open, the partial interests in the asset can be transferred many times over. It would be absurd to conclude that just because an asset was once partially owned by an estate, any litigation to determine the precise ownership interest of future interest holders

would have to happen in the probate court with parties who had nothing to do with the estate.

¶ 18    We therefore reject plaintiffs' argument that the district court lacked subject matter jurisdiction to determine the parties' percentage ownership.

### III.    Disposition

¶ 19    The judgment is affirmed.

JUDGE SULLIVAN and JUDGE MEIRINK concur.